685 A.2d 559

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael C. ZIEGELMEIER, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 19, 1996.

Filed Oct. 31, 1996.

Michael A. Scherer, Carlisle, for appellant.

Jaime M. Keating, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

Before KELLY, SCHILLER and HOFFMAN, JJ.

SCHILLER, Judge.

Appellant appeals from the judgment of sentence entered on October 3, 1995 by the Court of Common Pleas of Cumberland County, sentencing him to not less than 30 days nor more than 23 months imprisonment for his conviction of driving under the influence of alcohol.[1] We affirm.

FACTS:

At approximately 3:50 A.M. on the morning of September 24, 1994, appellant was driving south on Routes 11 and 15 in the Borough of Camp Hill, Cumberland County, when he encountered a sobriety checkpoint. Upon stopping at the checkpoint, appellant's vehicle was approached by Officer James R. Sadler of the Silver Spring Township Police Department. In the course of asking appellant for his driver's license and registration, Officer Sadler smelled alcohol on the appellant's breath; appellant admitted that he had been drinking. Officer Sadler directed appellant to pull into a safety area at the side of the road, where appellant was met by Officer David B. Pepperman of the Camp Hill Borough Police Department. Officer Pepperman was informed that appellant was directed to the pull-off area because of an admission of alcohol and the fact that Officer Sadler had smelled alcohol on

1. 75 Pa.C.S. § 3731.

appellant's breath. Officer Pepperman noticed that appellant had slurred speech and bloodshot eyes, and administered standardized field sobriety tests, which appellant failed. He was then arrested for driving under the influence of alcohol. At the DUI booking center, appellant took a breath test which revealed his blood alcohol content to be .112%.

A non-jury trial was scheduled before the Honorable Edgar B. Bayley. Prior to trial, appellant moved to suppress all evidence against him on the grounds that the roadblock was unconstitutional. After the taking of testimony, the trial judge denied the suppression motion and then, on a stipulated record, found appellant guilty of driving under the influence. He was sentenced on October 3, 1995 to imprisonment from 30 days to 23 months. This appeal followed.

DISCUSSION:

Appellant has raised three issues on this appeal: (1) whether the establishment of the roadblock was unconstitutional; (2) whether the detention by the officers at the roadblock was unlawful; and (3) whether appellant's trial counsel was ineffective for questioning the Commonwealth's witness regarding statistics used in making the determination of where to hold the DUI checkpoint.

The first issue is directed to whether the police complied with certain procedural requirements in setting up the roadblock. In particular, appellant argues that under *Commonwealth v. Trivitt*, 437 Pa.Super. 432, 650 A.2d 104 (1994), the Commonwealth was required to introduce into evidence the reports, data and statistics relied on by the police in determining the location of the DUI checkpoint.

When reviewing a ruling of the trial court regarding a motion to suppress evidence, "an appellate court must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom." *Commonwealth v. Gommer*, 445 Pa.Super. 571, 573, 665 A.2d 1269, 1270 (1995), *alloc. denied*, 1996 Pa. Lexis 1484 (July 22, 1996) (citation omitted). If the evidence supports the suppres-

sion court's findings, "we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error." *Commonwealth v. Gommer, supra,* at 573, 665 A.2d at 1270 (citation omitted). *See also Commonwealth v. Miller,* 541 Pa. 531, 555, 664 A.2d 1310, 1322 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996).

■ When a defendant files a motion to suppress, the burden is on the Commonwealth to prove, by a preponderance of the evidence, that the challenged evidence is admissible. Pa.R.Crim.P. 323; *Commonwealth v. Benton,* 440 Pa.Super. 441, 444, 655 A.2d 1030, 1032 (1995), citing *Commonwealth v. DeWitt,* 530 Pa. 299, 301, 608 A.2d 1030, 1031 (1992). However, on appeal from a decision denying suppression, our scope of review is limited and we must consider only the Commonwealth's evidence and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Epoca,* 447 Pa.Super. 183, 185, 668 A.2d 578, 579 (1995), *alloc. denied,* 544 Pa. 623, 675 A.2d 1243 (1996).

At the outset we note that it is well established that the stopping of an automobile and the detention of its occupants is a seizure subject to constitutional restraints under the United States [2] and Pennsylvania Constitutions.[3] *Commonwealth v. Blouse,* 531 Pa. 167, 169, 611 A.2d 1177, 1178 (1992). However, if the police follow specified procedures, systematic, non-discriminatory, non-arbitrary roadblocks for the purpose of

2. The Fourth Amendment to the United States Constitution provides:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.
   U.S. Const. Amend. IV.

3. Article 1, § 8 of the Pennsylvania Constitution provides:
   The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or thing shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.
   Pa. Const. Art. 1 § 8.

insuring safety on the highways have been deemed constitutional.[4]  *Id.;  See Michigan State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).

In *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), a plurality of the Supreme Court set forth guidelines to insure that an investigative roadblock is constitutionally acceptable:

> The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards.  First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field.  In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers.  The time of the roadblock should be governed by the same consideration.  Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

*Id.* at 293, 535 A.2d at 1043.  The Court held that a drunk-driver roadblock must be conducted "substantially in compliance" with the above guidelines.  *Id.*  These guidelines were adopted by a majority of the Supreme Court in *Commonwealth v. Blouse,* at 173, 611 A.2d at 1180.

█   At issue in this case is the requirement under *Tarbert* and *Blouse* "that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers." *Commonwealth v. Tarbert,* at 293, 535 A.2d at 1043.  In *Commonwealth v. Fioretti,* 371 Pa.Super. 535, 538 A.2d 570 (1988), this Court held that this requirement was satisfied when, at trial, the officer who planned the roadblock testified that the location of the roadblock was

4.  Authority for police to conduct such roadblocks is established in 75 Pa.C.S. § 6308(b).

chosen based on an evaluation of drunk driving arrests in Williamsport, and set up the roadblock in the police district that had a disparately high number of DUI arrests in the previous 18 months. In *Commonwealth v. Myrtetus*, 397 Pa.Super. 299, 580 A.2d 42 (1990), this requirement was satisfied where there was testimony by the chief of police, who ordered the roadblock, that the particular location was selected based on a statistical review of prior DUI incidents and times and places of DUI occurrences.

In the present case, Gregory J. Ammons, chief of police of the Borough of Camp Hill, testified on direct that he was responsible for determining the site of the checkpoint. He said that such a determination was based on "volume traffic, number of accidents, number of known DUI offenders that are apprehended on the roadway, underage drinking arrests, DUI related accidents." N.T. August 18, 1995, 4.

On cross examination, he stated that during a thirteen month period from September 1, 1993, to October 1, 1994, he had statistics that showed there were 58 DUI arrests in the area of the checkpoint, out of a total of 80 DUI arrests in the entire borough. Of those, it was established that eight were made the night of the checkpoint at issue.

On these facts, we find that there was substantial compliance with the requirements of *Tarbert* and *Blouse*. As in *Fioretti* and *Myrtetus*, there was testimony here by the police officer who selected the site as to what factors were considered in choosing that particular location. Chief Ammons testified that the determination was based on several factors, including volume traffic, number of DUI arrests in that area (as compared to the total number in Camp Hill) and the number of DUI related accidents. Therefore, the roadblock was constitutional under the requirements of *Tarbert* and *Blouse*.

■ Contrary to appellant's argument, the standards of *Commonwealth v. Trivitt* are not controlling. The decision there was not subscribed to by a majority of the Superior Court panel. Judge Cirillo wrote the opinion overturning the

DUI conviction, but Judge Del Sole only concurred in the result and President Judge Rowley dissented. As Judge Cirillo's opinion was not subscribed to by a majority of the three judge panel, it does not control our disposition of this case: "An opinion offered by a member of a three-member panel, with the remaining two judges either dissenting or concurring in the result, is of no precedential value." *Johnson v. Harris,* 419 Pa.Super. 541, 553, 615 A.2d 771, 777 (1992).

Appellant's next allegation of error is that his detention by the police was unlawful because there were no signs of intoxication shown by him that would have led Officer Sadler to have appellant go into the pull-off area. Officer Sadler testified that upon approaching appellant's car, he smelled alcohol on appellant's breath. He testified that he could not remember if he had asked appellant if he had been drinking, but stated that such a question was commonly asked. Officer Sadler directed appellant to the pull-off area. Officer Pepperman, who presided over the pull-off area, testified without objection that appellant was pulled off because there was a smell of alcohol and because appellant had admitted he was drinking. Officer Pepperman did not state how he knew that appellant had admitted drinking.

Appellant argues that the odor of alcohol alone was not enough to warrant further detention. However, there was circumstantial evidence that appellant also admitted drinking alcohol, as this was known by Officer Pepperman at the time he saw appellant. These factors constituted sufficient reason for Officer Sadler to direct appellant to the pull-off area for further questioning and tests. *See Heaps v. Com. Dept. of Transp., Bur. of Traf. Saf.,* 32 Pa.Cmwlth. 52, 377 A.2d 1058 (1977). Contrary to appellant's suggestion, it was not necessary for the first officer to perform field sobriety tests before directing the driver into the pull-off area for further examination.[5] It was enough that Officer Sadler had a reasonable

---

5. Appellant cites *Commonwealth v. Fioretti,* 371 Pa.Super. 535, 538 A.2d 570 (1988), as the model for justifying a further investigation after a roadblock. In that case this Court upheld an investigation where the officer, upon encountering the driver at a roadblock and suspecting that

suspicion that the driver was intoxicated to warrant further questioning and testing in the pull-off area.[6]  *See Commonwealth v. Hamme,* 400 Pa.Super. 537, 540, 583 A.2d 1245, 1247 (1990), citing *Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968).

■ Appellant's final argument is that his counsel was ineffective for bringing out on cross examination the testimony of Chief Ammons relating to the statistics used in determining the checkpoint site.  Appellant has based his argument on the assumption that *Commonwealth v. Trivitt* controls this case and required the testimony by Chief Ammons on cross-examination providing specific statistics concerning the number of DUI arrests in the checkpoint area.  However, as we have noted, *Commonwealth v. Trivitt* is not controlling, and the Commonwealth was not required to produce statistics to show that the checkpoint area chosen was one "likely to be travelled by intoxicated drivers."  As a result, appellant's claim of ineffective assistance of counsel is clearly meritless because the testimony by Chief Ammons on cross-examination was not necessary to show that the roadblock was conducted in a constitutional manner.[7]

the driver was under the influence of alcohol, gave him a horizontal gaze nystagmus test while the driver remained in the car, and it was only after the driver failed that test that he was asked to pull off onto the berm for further tests.  While this is one method justifying further inquiry, it is by no means the only method, nor has any Court mandated this preliminary step.

6.  We have found no one universal method of conducting DUI roadblocks.  As in this case, many cases have involved two step procedures—those where the driver is initially stopped and questioned, then if signs of intoxication are shown, the driver is asked to go to an area where further tests are conducted out of the way of the flow of traffic.  Such was the nature of the roadblock in *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), and *Michigan State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).

7.  Counsel is presumed to be effective, and the burden is on appellant to show ineffectiveness.  *Commonwealth v. Crawley,* 541 Pa. 408, 414, 663 A.2d 676, 679 (1995).  In order to establish a claim for ineffective assistance of counsel, appellant must satisfy the three part test articulated in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).  Appellant must show that (1) the issue underlying the claim of ineffectiveness has merit;  (2) the course of action or inaction by counsel had

CONCLUSION:

We conclude that: (1) the DUI roadblock satisfied the constitutional requirements of *Commonwealth v. Tarbert* and *Commonwealth v. Blouse*; (2) the detention of appellant during the roadblock was constitutional as it was based on reasonable suspicion; and (3) appellant's claim for ineffectiveness of counsel is not meritorious because the alleged ineffective cross-examination did not control the outcome of the case.

Consequently, the judgment of sentence of the Court of the Common Pleas of Cumberland County is affirmed.

no reasonable basis in advancing appellant's interests; and (3) appellant suffered prejudice as a result of the counsel's action or inaction. *See Commonwealth v. Kimball*, 453 Pa.Super. 193, 683 A.2d 666 (1996).