**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Tammy L. BLEE, Appellee.**

Superior Court of Pennsylvania.

Submitted November 20, 1996.
Filed May 5, 1997.

---

Peter Paul Olszewski, Jr., Dist. Atty., Wilkes–Barre, for Commonwealth, appellant.

Joseph J. Yeager, Forty Fort, for appellee.

Before McEWEN, President Judge, and POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

The Commonwealth appeals the order of the Court of Common Pleas of Luzerne County granting appellee's motion to suppress the result of her blood alcohol test. The trial court suppressed the evidence because it believed that the manner in which the sobriety checkpoint location was chosen was unconstitutional, and, therefore, appellee was not stopped properly by the police. Specifically, the trial court determined that the Commonwealth failed to present specific evidence establishing the number of alcohol-related accidents and arrests on Route 11 in the Borough of Edwardsville, Luzerne County, the area where the sobriety checkpoint was located. We affirm.[1]

Our standard of review in this case is well-settled.

In reviewing an order granting a motion to suppress, an appellate court may consider only the evidence of the defendant's witnesses and so much of the Commonwealth's evidence that, read in the context of the record as a whole, remains uncontradicted. Furthermore, our scope of appellate review is limited primarily to questions of law. We are bound by the suppression court's findings of fact if those findings are supported by the record. Factual findings wholly lacking in evidence, however, may be rejected.

*Commonwealth v. Torres*, 429 Pa.Super. 228, 632 A.2d 319, 320 (1993) (citations omitted).

After a careful review of the record, we are satisfied that the trial court's factual findings are supported by the record and are as follows: On July 7, 1995, at approximately 11:30 p.m., appellee's vehicle was stopped at a sobriety checkpoint located one-quarter mile south of Main Street on Route 11 in Edwardsville. Police Officer David Souchick approached appellee's vehicle and asked her some routine questions. During the questioning, Officer Souchick noticed that appellee's vehicle's interior smelled of alcohol, that her speech was slurred and that her eyes were glassy. Officer Souchick requested that appellee drive to the designated pull-off area. Appellee so complied. She was then transported to the Wilkes–Barre General Hospital where she submitted to a blood alcohol test. Her blood alcohol level was 0.197%. Appellee was charged with driving while under the influence of alcohol (DUI)[2] and driving while her operating privileges were suspended or revoked.[3]

Appellee filed an omnibus pretrial motion which contained a motion to quash and/or dismiss the information and a motion to suppress the result of the chemical test. On March 22, 1996, a hearing on these motions

---

1. The Commonwealth certifies that the suppression order substantially handicaps or effectively terminates its prosecution of the case. This permits appellate review of the suppression order. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

2. 75 Pa.C.S.A. § 3731(a)(1), (4), (5).

3. 75 Pa.C.S.A. § 1543(a).

was held.[4] At the hearing, appellee alleged that the sobriety checkpoint held on July 7, 1995, was unconstitutional, and, therefore, the result of her chemical test should be suppressed. Specifically, appellee questioned the constitutionality of the manner in which the location of the sobriety checkpoint was chosen. The testimony at the hearing revealed the following in that regard: Deputy Chief William Barrett of the Wilkes–Barre Police Department testified that he was responsible for determining the site of the checkpoint. He decided to locate the checkpoint on Route 11 approximately one-quarter mile south of Main Street, near the shopping center in Edwardsville. In making this decision, Deputy Chief Barrett considered motorist safety, traffic volume, availability of lighting and whether motorists would have ample opportunity to avoid the checkpoint if they so desired. He also testified that he reviewed studies from the Pennsylvania Department of Transportation (PennDOT) regarding DUI arrests and DUI-related accidents in Luzerne County during the years 1989 through 1994. These studies were introduced into evidence and made a part of the record. On cross-examination, Deputy Chief Barrett admitted that the studies were not specific to DUI-related accidents and arrests at the particular location of the sobriety checkpoint, that is, Route 11 in Edwardsville. Rather, the studies provided general information indicating the number of DUI-related accidents and arrests in Luzerne County, the municipalities located in Luzerne County and the roads bordering Luzerne County. Specifically, the studies indicated that, among the roads in Luzerne County, Route 11 had the second highest incidence of alcohol-related accidents, and that, among the municipalities in Luzerne County, Edwardsville had one of the highest incidence of alcohol-related accidents.[5] The studies did not provide any information concerning DUI-related accidents or arrests in the area of the checkpoint nor did it indicate the likelihood of the checkpoint location being traveled by drunk drivers. Simply put, there was no data regarding DUI-related accidents or arrests on Route 11 in Edwardsville.

It is well-settled that the stopping of an automobile and the detention of its occupants is a seizure subject to constitutional restraints under the United States and Pennsylvania Constitutions.[6] *Commonwealth v. Fioretti,* 371 Pa.Super. 535, 538 A.2d 570 (1988). "However, if the police follow specified procedures, systematic, non-discriminatory, non-arbitrary roadblocks for the purpose of insuring safety on the highways have been deemed constitutional." *Commonwealth v. Ziegelmeier,* 454 Pa.Super. 330, 685 A.2d 559, 561 (1996) (citation omitted). In *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), a plurality of our supreme court set forth guidelines to insure that an

4. We note that following the hearing the trial court entered an order specifically granting appellee's motion to quash and/or dismiss the information on the basis that the sobriety checkpoint was unconstitutional, and the evidence was obtained illegally. The trial court failed to address the merits of appellee's motion to suppress the result of her chemical test. The Commonwealth filed an appeal contending that the trial court erred in granting appellee's motion to quash and/or dismiss the information and her motion to suppress. We reversed the trial court's order quashing and/or dismissing the information. Specifically, we found that a court cannot quash and/or dismiss an information merely because the court believes that some or all of the Commonwealth's evidence has been obtained illegally. However, we were unable to address the Commonwealth's contention regarding appellee's motion to suppress since the trial court failed to address the merits of the suppression motion. Accordingly, we remanded the case directing the trial court to enter an order granting or denying appellee's motion to suppress and an opinion in support thereof. The record has been supplemented with a trial court order granting appellee's motion to suppress and the requested opinion. Accordingly, we will now review the Commonwealth's contention that the trial court erred in granting appellee's motion to suppress.

5. Deputy Chief Barrett testified that from 1989 through 1994 there were 185 alcohol-related accidents on Route 11 in Luzerne County, which is approximately thirty-eight miles in length. N.T. 3/22/96 pp. 12–13. He also testified that there were forty-one alcohol-related accidents in the Borough of Edwardsville, which contains numerous roads. N.T. 3/22/96 pp. 13, 28.

6. The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures.

investigative roadblock is acceptable.[7] Specifically, our supreme court indicated the following:

> The possibility of arbitrary roadblocks can be curtailed significantly by the institution of certain safeguards. First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. *In this connection, it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers.* The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

*Tarbert,* 535 A.2d at 1043 (emphasis added). This court has held that sobriety checkpoints must be conducted "substantially in compliance" with the above guidelines. *Ziegelmeier, supra.*

 At issue in this case is the requirement that "the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers." In *Fioretti, supra,* this Court held that the requirement was satisfied where the officer who planned the roadblock testified that the location of the roadblock was chosen based on an evaluation of DUI arrests in the *particular police district in Williamsport* which had a disparately high number of DUI arrests. In *Commonwealth v. Myrtetus,* 397 Pa.Super. 299, 580 A.2d 42 (1990), we found that the requirement was satisfied where the roadblock was chosen based upon a statistical review of DUI-related accidents on a *particular road located in Upper Southampton Township in Bucks County.* In *Ziegelmeier, supra,* we found that the requirement was satisfied where the location of the roadblock was chosen based on an evaluation of DUI-related accidents and arrests in the *particular area of the checkpoint in the Borough of Camp Hill.* Moreover, in *Commonwealth v. Trivitt,* 437 Pa.Super. 432, 650 A.2d 104 (1994) (Cirillo, J., plurality opinion),[8] this Court held that the requirement was not satisfied where the Commonwealth failed to offer evidence regarding DUI-related accidents and arrests for the particular area of Route 74 between the city of York and Davidsburg Road where the sobriety checkpoint was located.

In this case, Deputy Chief Barrett testified that in choosing the checkpoint's location he considered PennDOT studies regarding DUI-related accidents and arrests in Luzerne County during the years 1989 through 1994. While Deputy Chief Barrett

---

7. The reasoning set forth in *Tarbert* has been accepted by this Court and a majority of our supreme court. *See Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177 (1992); *Ziegelmeier, supra; Fioretti, supra.*

8. We are not bound by the rules of law enunciated in *Trivitt, supra. Johnson v. Harris,* 419 Pa.Super. 541, 615 A.2d 771 (1992) (an opinion offered by a member of a three-member panel, with the remaining two judges either dissenting or concurring in the result, is of no precedential value). In *Ziegelmeier,* a panel of this Court declined to adopt *Trivitt's* conclusion that the Commonwealth is required to introduce into evidence the reports, data and statistics relied on by the police in determining the location of the sobriety checkpoint. However, the panel in *Ziegelmeier* implicitly agreed with *Trivitt's* conclusion that the Commonwealth is required to present some type of evidence regarding the manner in which the *specific* location of the sobriety checkpoint was chosen. That is, both *Ziegelmeier* and *Trivitt* require the Commonwealth to introduce evidence regarding the number of DUI-related accidents and arrests in the particular area of the sobriety checkpoint at issue. While the cases agree as to the quantum of evidence required, they disagree as to the nature of the evidence required. In *Ziegelmeier,* we expressly determined that the Commonwealth is not required to introduce into evidence the reports, data and statistics relied on by the police in determining the location of the sobriety checkpoint. Rather, the testimony of the officers who selected the site as to what factors they considered in choosing the particular location is sufficient to pass constitutional scrutiny. Based on the officers' testimony in *Ziegelmeier,* we concluded that the roadblock was constitutional since testimony established the number of DUI-related accidents and arrests in the particular area of the checkpoint. Such is not the case here.

testified concerning the number of alcohol-related accidents on Route 11 in Luzerne County and the number of alcohol-related accidents in Edwardsville, Luzerne County, he never testified as to the number of alcohol-related accidents and/or arrests on Route 11 in Edwardsville, the specific location of the sobriety checkpoint. "To ensure that the intrusion upon the travelling public remains minimal, we cannot accept the general testimony elicited at appellee's hearing as proof of 'substantial compliance' with the guidelines enunciated in *Tarbert*." *Trivitt,* 650 A.2d at 107. At the very least, the Commonwealth was required to present information sufficient to specify the number of DUI-related arrests and/or accidents on Route 11 in Edwardsville, the specific location of the sobriety checkpoint. Accordingly, we find that the sobriety checkpoint did not satisfy the requirements of *Tarbert,* that the sobriety checkpoint was unconstitutional, that appellee's vehicle was not stopped properly and that the trial court properly suppressed the result of appellee's blood alcohol test.

Order affirmed.