COMMONWEALTH of Pennsylvania,
Appellee,

v.

Anil L. RASTOGI, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 19, 2002.

Filed Feb. 5, 2003.

Before DEL SOLE, P.J., and KLEIN and CAVANAUGH, JJ.

OPINION BY KLEIN, J.:

¶ 1 Anil L. Rastogi appeals from the order entered March 7, 2002 in the Court of Common Pleas of Philadelphia County denying Rastogi's petition for a writ of *certiorari* to the Philadelphia Municipal Court. Rastogi was arrested on October 15, 1999, at a sobriety checkpoint in Philadelphia and charged with driving under the influence.[1] At trial in Philadelphia Municipal Court, he filed a motion to suppress physical evidence before Judge Linda F. Anderson. Judge Anderson denied the motion to suppress and found Rastogi guilty. Rastogi then filed a petition for a writ of *certiorari* in the Court of Common Pleas, claiming that the sobriety checkpoint was administered in an unconstitutional manner. Judge Joyce S. Kean denied the petition, and Rastogi appeals. We affirm.

¶ 2 Essentially, Rastogi claims that the administration of the sobriety checkpoint failed to pass constitutional muster for two reasons. The first is that the data upon which the roadblock was selected was stale, being approximately two years old. The second is that notice was inadequate because although a press release was sent to 40 different television stations and newspapers, there was no evidence that any in fact published the notice. Both claims fail.

### 1. The staleness claim.

¶ 3 Rastogi asserts that the Philadelphia police officer improperly relied on information two to six years old when they

Gregory H. Quigley, Philadelphia, for appellant.

Catherine L. Marshall, District Attorney, Philadelphia, for Commonwealth, appellee.

---

1. 75 Pa.C.S.A. § 3731.

decided where to place the roadblock.[2] To carry its burden to establish admissibility, in Municipal Court the Commonwealth presented the testimony of Lieutenant Jerry Green, who is the project coordinator of Philadelphia's sobriety checkpoint program.[3] He testified that he, rather than the officers on the street, determines where a roadblock will be placed. He stated that in choosing where to put the roadblock, he looked at statistics compiled by the Pennsylvania Department of Transportation. Lieutenant Green explained that although the statistics were between two and six years old, they were the latest then available. He also stated that for confirmation he looked at Philadelphia Police Department accident investigation statistics for the years 1996 and 1997, which showed 80 and 101 arrests for those years respectively on Allegheny Avenue. Because the vast majority of the alcohol-related accidents and DUI arrests occurred in the eastern portion of Allegheny Avenue, he chose the 2100 block of that street. Similarly, because nearly half the alcohol-related accidents had occurred between 10 p.m. and 4 a.m., he scheduled the checkpoint during those hours.

¶ 4 Because stopping and detaining drivers at a roadblock seizes the car and its occupants, roadblocks are restrained by the protections against unreasonable seizures found in the Fourth Amendment of the United States Constitution, as well as in Article 1, Section 8 of the Pennsylvania Constitution.[4] *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177, 1178 (1992). To avoid unreasonable seizures, roadblocks must be established in compliance with the following guidelines:

> "First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be traveled by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision."

2. This is an issue of first impression in Pennsylvania.

3. In an appeal from the denial of a motion to suppress, we must determine whether the record supports the suppression court's factual findings. When the evidence supports the suppression court's findings, we may reverse only if the legal conclusions drawn from those factual findings are erroneous. *Commonwealth v. Turner*, 772 A.2d 970, 972 (Pa.Super.2001).

4. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. 4. The Pennsylvania Constitution also protects against unreasonable seizures: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." Pa. Const. Art. 1, § 8.

*Blouse,* 531 Pa. 167, 611 A.2d 1177, 1180; *see also Commonwealth v. Ziegelmeier,* 454 Pa.Super. 330, 685 A.2d 559, 562 (1996) (quoting *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035, 1043 (1987) (plurality decision)). These guidelines ensure that citizens are not subjected to unreasonable seizures as the result of arbitrary stops. *Blouse,* 611 A.2d at 1178; *Tarbert,* 535 A.2d at 1043. Underlying the Supreme Court's guidelines is a requirement that police act reasonably in conducting the roadblock, including choosing the site. Although authorities must follow the guidelines, so long as they substantially comply with them, we will find no constitutional violation. *Ziegelmeier,* 685 A.2d at 562.

¶ 5 In response to the guidelines, the General Assembly granted police officers statutory authority to conduct non-arbitrary roadblocks:

> Authority of a police officer.—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b). In order to ensure that seizures made under this authority are constitutionally reasonable, this authority is still tempered by the *Tarbert/Blouse* guidelines. *Blouse,* 611 A.2d at 1180–81.

¶ 6 Here, Rastogi argues that the information the police used in selecting the location of the roadblock was too old for the police to be allowed to rely on it in selecting the site. However, the police are not required to produce any statistics at all to justify the selection of the roadblock location. *Ziegelmeier,* 685 A.2d at 563.

¶ 7 Nonetheless, Rastogi insists that a non-binding Massachusetts case, *Commonwealth v. Donnelly,* 34 Mass.App.Ct. 953, 614 N.E.2d 1018 (1993) demonstrates that the information was impermissibly stale. Even if it bound us, *Donnelly* would not compel a different result. Under Massachusetts law, the roadblock must be located in a "problem area, one where accidents or prior arrests for drunken driving have occurred." *Donnelly,* 614 N.E.2d at 1020. The Appeals Court of Massachusetts determined that the evidence was insufficient to establish that the roadblock was in a problem area because the prosecution offered nothing more recent than a two-year-old letter from local police relating two drunk-driving arrests at the location in question. Although the officer testified that there had been subsequent roadblocks at the same location, the prosecution offered no information on the number of alcohol-related arrests made during those roadblocks. Employing the Massachusetts requirement that there be strict compliance with the guidelines, the court found the evidence insufficient.[5] In contrast, in the case presently considered, nothing in the record suggests that more recent statistics were available.

¶ 8 Moreover, the Philadelphia police acted reasonably in this case as shown by Lieutenant Green's substantial compliance

---

**5.** It is also noteworthy that Massachusetts law requires strict compliance with the guidelines. *Donnelly,* 614 N.E.2d at 1020.

with the *Tarbert/Blouse* guidelines. Although using two- to six-year-old information approaches the outer perimeter of what was reasonable under the circumstances, we hold that the location of the roadblock was reasonable and meets the test of being a "systematic, non-discriminatory, non-arbitrary" roadblock. *See Blouse*, 611 A.2d at 1178.

### 2. The adequacy of the notice.

■ ¶ 9 Rastogi also argues that the roadblock was also unconstitutional "due to the lack of evidence of the existence of advance publicity concerning the establishment of the checkpoint." (Appellant's brief at 13.)

¶ 10 In *Blouse*, our Supreme Court explained that "to avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance." *Blouse*, 611 A.2d at 1180. The *Blouse* court imposed this standard relying on statements in the plurality decision in *Tarbert*, which indicated that "[a] sign indicating that the motorist is about to be stopped and suggesting the nature of the stop may provide advance warning of the roadblock. Furthermore, checkpoint operations usually are marked by flashing lights, police vehicles, and the presence of uniformed officers." *Tarbert*, 535 A.2d at 1041. However, "[n]either *Blouse* nor *Tarbert* mandate that the police must place advance notice of the DUI checkpoint in any local or regional publication." *Commonwealth v. Pacek*, 456 Pa.Super. 578, 691 A.2d 466, 471 (1997).

¶ 11 In this case, there does not seem to be a dispute that the police placed signs prominently in front of the roadblock, and there were lights, a number of officers, and police cars at the actual site of the roadblock. We agree with the words of Judge Kean, who denied *certiorari*, saying:

> The issuance of the news release, the placement of descriptive signs well before the checkpoint, and the presence of numerous police officers and lighting at the checkpoint are evidence of advance notice. It is difficult to imagine what further action could be taken regarding this requirement. Substantial compliance has clearly been demonstrated.

Trial Court Opinion, 5/7/2002, at 4.

■ ¶ 12 But there is no requirement that the police advertise or notify the media of the location of the roadblock at all. As Judge Brosky cogently observed in *Pacek*, "neither *Blouse* nor *Tarbert* suggest that motorists approaching a DUI checkpoint must be afforded an opportunity to avoid the checkpoint." *Pacek*, 691 A.2d at 471. Rather, officials must take steps to give approaching motorists reasonable warning. Here, they accomplished this end by clearly marking the roadblock and going the extra step of notifying the media. Whether or not any of the media responded to the press release, the police took more than adequate steps. The police acted reasonably to avoid unnecessary surprise to motorists, and that is all that is required.

¶ 13 Order affirmed.

¶ 14 DEL SOLE, P.J., concurs in the result.