J-E02008-14

2014 PA Super 272

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CIPRIANO GARIBAY | |
| Appellant | No. 758 WDA 2012 |

Appeal from the Judgment of Sentence April 3, 2012
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004217-2010

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, J., SHOGAN, J., ALLEN, J., OTT, J., WECHT, J., STABILE, J., and JENKINS, J.

DISSENTING OPINION BY OTT, J.:                    Filed:  December 9, 2014

Because I believe the testimony presented at the suppression hearing supports the trial court's denial of Garibay's motion to suppress evidence and the trial court's conclusions are free from legal error, I respectfully dissent.

In considering Garibay's motion to suppress evidence, the trial court was required to determine whether the seatbelt checkpoint established by the Pittsburgh Police Department substantially complied with the **Tarbert/Blouse** guidelines, established under **Commonwealth v. Tarbert**, 535 A.2d 1035 (Pa. 1987) and **Commonwealth v. Blouse**, 611 A.2d 1177

(Pa. 1992).[1]  These guidelines, which will be more fully discussed below, are designed to protect individuals from *unreasonable* searches and seizures, pursuant to the United States and Pennsylvania Constitutions.  Therefore, the trial court was tasked with determining whether the Commonwealth's action in establishing a seatbelt checkpoint on Banksville Road, at the time in question, was unreasonable.  The Majority has agreed with Garibay and concluded that because the Commonwealth did not produce statistics, data or reports to support the choice of location as one in which there are seatbelt violations, the Commonwealth acted unreasonably.  I believe the Majority's conclusion ignores the trial court's determination of the paramount purpose of the checkpoint and therefore unnecessarily advocates a strict application of the time and location factors.

In reviewing the denial of a motion to suppress, "[o]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Kearney***, 92 A.3d 51, 65 (Pa. Super. 2014).  Further, "[t]he sensible interpretation of the rule is that when reviewing the denial of a motion to suppress, we look at all of the evidence in the light

_____

[1] There is no dispute that the ***Tarbert/Blouse*** guidelines, announced for application to DUI roadblocks, also apply to vehicle safety checkpoints. ***See In re J.A.K.***, 908 A.2d 322, 326 n.3 (Pa. Super. 2006).

most favorable to the Commonwealth and determine whether the record supports the suppression court's findings of fact." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1208 (Pa. Super. 2002) (*en banc*).

The ***Tarbert/Blouse*** decisions set forth guidelines for the establishment of sobriety checkpoints to balance the legitimate governmental interests of conducting such checkpoints with the necessary protection of individuals from "arbitrary invasions [of privacy] at the unfettered discretion of the officers in the field." ***See*** Majority Opinion, at 6, *citing* ***Blouse***, 611 A.2d at 1178.  Those guidelines are:

> [T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants.  To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance.  The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards.  First, the very decision to hold a drink-driving roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field.  In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers.  The time of the roadblock should be governed by the same consideration.  Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

***Blouse***, 611 A.2d at 1180 (*quoting* ***Tarbert***, 535 A.2d at 1043).

The ***Tarbert/Blouse*** guidelines are not mandatory rules. Rather, there must be "substantial – and not complete – compliance" to pass Constitutional muster. ***Worthy, supra***, 957 A.2d at 725. In this appeal, Garibay has only challenged the sufficiency of the evidence regarding the location and time of the roadblock.[2] Therefore, the review of the trial court's decision is necessarily limited to the court's factual findings and legal conclusions addressing that particular ***Tarbert/Blouse*** criteria.

Testimony regarding establishment and administration of the checkpoint was provided by Sergeant Richard Howe of the City of Pittsburgh Police Department, at the December 15, 2011 suppression hearing. Sergeant Howe was the liaison between the police department and the Pennsylvania Department of Transportation (PennDOT) for the Click it or Ticket Buckle Up Campaign. ***See*** N.T. Hearing, 12/15/2011, at 4. Regarding the choice of Banksville Road for the seatbelt checkpoint, Sergeant Howe testified as follows:

> Q. And, lastly, this location of Banksville Road where this was, where you specified this to have occurred, how did you come to specify Banksville Road?
>
> A. The State likes us to do these safety check seatbelt checkpoints on busy roadways within the City of Pittsburgh. They pull that information from vehicle traffic, the volume of traffic and high accident locations.

_____

[2] Accordingly, for the purpose of this appeal, all other guidelines have been met.

Q. Okay. And what are some of the other examples of roads in the city that you have been told to use as locations[?]

A. We have done West Liberty Avenue. We have done Saw Mill Run Boulevard, which is Route 51. We have done in the past I believe on Bigelow Boulevard.

Q. And those locations, as well as Banksville Road, are all mentioned, I guess, to you by the statewide campaign?

A. Yes. They like to go where we do have high volume vehicle traffic. That way the message for the seatbelts can get out.

Q. The things you just described, high accident rate, high traffic, did those things that PennDOT apparently had, did that seem to comport with your own experience as an officer and being familiar with Banksville Road?

A. Within the City of Pittsburgh, yes.

N.T. Hearing, 12/15/2011, at 6-7.

In determining that the evidence presented by the Commonwealth was sufficient to demonstrate substantial compliance regarding the time and location of the seatbelt checkpoint, the trial court opined:

The fourth standard [the choice for time and location of the checkpoint must be supported by local experience as to when and where drunk drivers are likely to be traveling] is not directly applicable in that it applies to DUI checkpoints and intoxicated drivers. However, the underlying rationale for this standard, i.e. the purpose to be served by the checkpoint will be accomplished because the location of the checkpoint is appropriate, is applicable in this context as well. It is the purpose of the Click it or Ticket checkpoint that as many drivers as possible are given the message of the importance of seatbelt use to promote public safety (T.R. 12/15/11, p. 5, 6, 7). Therefore, the selection of a busy roadway is paramount. As was stated previously, review of traffic data by the Commonwealth and the experience of a veteran Pittsburgh Police sergeant confirmed that this section of Banksville Road was well-traveled and had a high accident count,

- 5 -

making it a prime location to get the word out about seatbelt safety. (T.R. 12/15/11, p. 7).

Trial Court Opinion, 11/20/2012, at 10, ¶ 4.

The trial court's finding of the purpose of the checkpoint is supported by the record. I do not believe the trial court's conclusion that Sergeant Howe provided a sufficient testimonial basis to support the Banksville Road location was in error.

Initially, "the police are not required to produce any statistics at all to justify the selection of the roadblock location." ***Commonwealth v. Rastogi***, 816 A.2d 1191, 1194 (Pa. Super. 2003) *quoting* ***Commonwealth v. Ziegelmeier***, 685 A.2d 559, 563 (Pa. Super. 1996).[3] In ***Ziegelmeier***, Camp Hill Chief of Police Gregory Ammons testified the choice of location for the DUI checkpoint was based upon "***volume of traffic, number of accidents, number of known DUI offenders that are apprehended on the roadway, underage drinking arrests, DUI arrests***." ***Ziegelmeier***, at 562 (emphasis added). On cross-examination, Chief Ammons testified that 58 of 80 borough DUI arrests in the prior 13 months occurred in the

_____

[3] Prior to ***Ziegelmeier***, a panel of our court decided ***Commonwealth v. Trivitt***, 650 A.2d 104 (Pa. Super. 1994) which ostensibly required the Commonwealth to produce written reports, statistics or data to support the choice of location for a DUI roadblock. ***Ziegelmeier***, decided in 1996, recognized that ***Trivitt*** was a plurality decision; therefore ***Trivitt*** was not controlling law.

general area of the checkpoint and eight occurred at the specific location.[4]

In his appeal, Ziegelmeier claimed trial counsel was ineffective for essentially making the Commonwealth's case by bringing out the actual DUI arrest statistics. Our Court held:

> The Commonwealth was not required to produce statistics to show that the checkpoint area chosen was one "likely to be travelled by intoxicated drivers." As a result, appellant's claim of ineffective assistance of counsel is clearly meritless because **the testimony by Chief Ammons on cross-examination was not necessary to show that the roadblock was conducted in a constitutional manner**.

*Id*. at 563 (emphasis added).

Therefore, while specific numbers regarding DUI arrests were presented to the trial court in *Ziegelmeier*, our Court specifically rejected the production of such specific testimony as a constitutional requirement to support choice of location.

However, the *Ziegelmeier* decision was misinterpreted by *Commonwealth v. Blee*, 695 A.2d 802 (Pa. Super. 1997). In a footnote, *Blee* discussed the *Ziegelmeier* and *Trivitt* decisions:

> In *Ziegelmeier*, a panel of this Court declined to adopt *Trivitt's* conclusion that the Commonwealth is required to introduce into evidence the reports, data and statistics relied on by the police in determining the location of the sobriety checkpoint. However, the panel in *Ziegelmeier* implicitly agreed with *Trivitt's* conclusion that the Commonwealth is required to present **some** (emphasis added) type of evidence regarding the manner in

_____

[4] For reference, 58 incidents in a 13 months period translate to one incident every 6.7 days. The eight arrests translate to one arrest every 48.75 days.

which the *specific* location of the sobriety checkpoint was chosen. That is, both ***Ziegelmeier*** and ***Trivitt*** require the Commonwealth to introduce evidence regarding the number of DUI-related accidents and arrests in the particular area of the sobriety checkpoint at issue.

***Commonwealth v. Blee***, 695 A.2d at 805, n. 8.

This discussion led to ***Blee's*** holding that, "At the very least, the Commonwealth was required to present information sufficient to specify the number of DUI-related arrests and/or accidents on Route 11 in Edwardsville, the specific location of the sobriety checkpoint." ***Blee***, at 806. ***See also*** Majority Opinion at 8.

However, the concluding sentence of the footnote and resulting holding of ***Blee*** are misstatements of ***Ziegelmeier's*** holding that such specific statistical information was **not** required to prove constitutionality. Specific numbers of DUI-related arrests and/or accidents are statistics, and ***Ziegelmeier*** held that such statistics are not required to prove constitutionality. ***Blee*** has never been cited by our Court or our Supreme Court for the proposition that the Commonwealth must provide such specific numbers to support the choice of a checkpoint location. In light of ***Blee's*** misinterpretation of ***Ziegelmeier***, I do not believe that ***Blee*** represents a binding decision.

Therefore, any failure by the Commonwealth to provide "documentary or testimonial evidence that specifies the reports, data or statistics relied

upon in selecting the location (or time) of the checkpoint"[5], as complained of by Garibay, is not fatal to the Commonwealth's case.

Because specific numbers are not a requirement to demonstrate substantial compliance, an examination of the record demonstrates no legal error in the trial court's conclusion that the evidence presented by the Commonwealth was constitutionally sufficient. As the trial court explained, the main purpose of this checkpoint was the dissemination of information to as many citizens as possible. Sergeant Howe testified that to achieve this goal PennDOT suggested multiple sites, including West Liberty Avenue, Saw Mill Run Boulevard (Route 51), and Bigelow Boulevard; all of which the Commonwealth had used for prior seatbelt checkpoint locations. **See** N.T. Hearing, 12/15/2011, at 7. There is nothing in the certified record to suggest that any of these locations was improper.[6] The information from PennDOT is culled from their database of traffic information.[7] Sergeant

_____

[5] **See** Garibay's Appellate Brief, Statement of Questions Involved, at 3.

[6] This evidence is somewhat akin to **In re J.A.K.**, 908 A.2d 322 (Pa. Super. 2006). **J.A.K.** also involved a seatbelt checkpoint. A panel of our Court determined that police officer testimony that a checkpoint location had been used on three prior locations, without any testimony regarding specific numbers provided sufficient information to support the choice of checkpoint location. However, in **J.A.K.** the issue of location was not contested, therefore the decision's commentary on the issue is *dicta.*

[7] **See** N.T. Hearing, 12/15/2011, at 6 ("The State likes us to do these safety check seatbelt checkpoints on busy roadways within the City of Pittsburgh. *(Footnote Continued Next Page)*

Howe further testified that his experience as a City of Pittsburgh police officer confirmed the information and suggestions of PennDOT as proper locations for a seatbelt checkpoint. This evidence provides ample support for the choice of Banksville Road as a seatbelt checkpoint, given the stated purpose of the checkpoint. Sergeant Howe's testimony, presented at the hearing and accepted by the trial court, supports its finding the location choice was not arbitrary or otherwise unreasonable. Therefore, I believe this aspect of the *Tarbert/Blouse* guidelines has been met.

Although the Commonwealth presented no evidence regarding the timing of the checkpoint, the timing factor is not directly applicable to seatbelt usage as compared with intoxicated driving. Therefore, because substantial and not total compliance is the applicable standard, I would agree with the trial court that the evidence presented by the Commonwealth fulfilled the requirements of substantial compliance.

I recognize that the Majority is concerned that deviation from the *Blee* requirements of specific statistical reference represents the application of a lesser standard. *See* Majority Opinion, at 12. However, I do not believe this approach represents a lesser standard. Rather, I believe this analytical approach in determining substantial compliance comports with our standards of determining constitutionality in other search and seizure cases. The

*(Footnote Continued)* ─────────────

They pull that information from vehicle traffic, the volume of traffic and high accident locations.").

general standard applied in such matters, whether we are tasked with determining reasonable suspicion or probable cause, is an examination of the totality of the circumstances.[8] The application of this standard recognizes that vastly different circumstances may attend each search and seizure episode.

As every search warrant, street encounter or traffic stop is based upon different factors, the same is true of checkpoints. Here, the trial court simply recognized the difference in purpose between a seatbelt checkpoint and a DUI checkpoint, and evaluated the evidence supporting time and location of the seatbelt checkpoint accordingly. *See* Trial Court Opinion, 11/20/2012, at 10, ¶4, *supra*. The general purpose of a DUI roadblock is the apprehension of impaired drivers, and this purpose suggests that more specific evidence be required to support the selection of location and timing of the roadblock. However, the time and location nexus to a DUI checkpoint is not directly analogous to a seatbelt checkpoint. Therefore, accepting the Commonwealth's evidence without a statistical basis is not

---

[8] This totality of circumstances approach was advocated by Justice Eakin in his concurring opinion in *Commonwealth v. Worthy*, 957 A.2d 720, 728-29 (Pa. 2008). In large part, "substantial compliance" might be seen as simply a restatement of "totality of the circumstances."

*See Commonwealth v. Lyons*, 79 A.3d 1053 (Pa. 2013); *Commonwealth v. Bailey*, 947 A.2d 808 (Pa. Super. 2008); and *Commonwealth v. Watkins*, 344 A.2d 678 (Pa. Super. 1975), among a host of other cases, for examples of the application of totality of the circumstances as the analytical basis for examining search and seizure issues.

representative of a lower standard; it is a weighing of factors as applied to the specific circumstances of the matter before us, in light of the factual determinations made by the trial court.

Accordingly, I believe the trial court correctly determined the Commonwealth presented sufficient evidence to demonstrate substantial compliance with the **Tarbert/Blouse** guidelines. Therefore, I respectfully dissent.

Judges Allen and Stabile join this dissenting opinion.