Thomas W. WHITEFORD

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 20, 2001.

Decided Aug. 24, 2001.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

David J. Humphreys, Pittsburgh, for appellee.

Before SMITH, Judge, KELLEY, Judge, and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals from the March 23, 2000 order of the Court of Common Pleas of Allegheny County (trial court) sustaining the appeal of Thomas W. Whiteford (Licensee) from a one-year suspension of his operating privilege pursuant to Section 1547(b)(1) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b)(1).[1] In this appeal, we are presented with the issue of whether the trial court erred in sustaining Licensee's appeal where the Department was unable to provide Licensee with the results of chemical testing pursuant to Section 1547(g) of the Code, 75 Pa.C.S. § 1547(g), which requires

---

1. Section 1547(b)(1) of the Code, commonly referred to as the Implied Consent Law, provides that:

> If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

75 Pa.C.S. § 1547(b)(1).

that the results of any chemical testing be made available to Licensee or his counsel upon request. We affirm.

The facts of this case are as follows. On August 18, 1999, Officer Donald Temple of the Plum Borough Police Department (Police Department) responded to a one-vehicle accident. Upon arriving at the scene, Officer Temple observed Licensee walking away from the vehicle. Officer Temple approached Licensee and observed that he smelled of alcoholic beverage, had blood-shot eyes, slurred his speech and had trouble keeping his balance.

Two other police vehicles arrived at the scene. Sergeant Richard Kudranski performed three field sobriety tests on Licensee, which he failed. Officer Mark Focareta advised Licensee that he was under arrest for driving under the influence[2], read him the *O'Connell*[3] warnings, and then transported him to the Police Department.

At the Police Department, Officer Focareta instructed Licensee on the proper technique for performing the breathalyzer test. In all, Officer Focareta attempted to have Licensee perform three breathalyzer tests. On the first breath of the first test, Licensee successfully performed the test and provided a sufficient sample. However, on the second breath of the first test, Licensee failed to perform the test satisfactorily.

Officer Focareta again explained the proper technique for completing the breathalyzer test. As with the first test, Licensee provided sufficient samples on the first breath of the second and third tests but failed to provide sufficient samples on the second breath of the second and third tests. In other words, Licensee was able to provide a sufficient sample for the first breath of each test but did not provide a sufficient sample on the second breath of each test. Therefore, Officer Focareta terminated the breathalyzer test.

Sergeant Kudranski then attempted to administer the breathalyzer test to Licensee. After receiving a third set of instructions from Sergeant Kudranski, Licensee performed the breathalyzer in the same manner as he had in the previous three tests. He provided a sufficient sample for the first breath of the test but failed to provide a sufficient sample for the second breath.

Sergeant Kudranski advised Officer Focareta to transport Licensee to Citizen General Hospital for blood testing. Licensee initially consented to have blood testing performed; however, upon arriving at the hospital, Licensee's father instructed him to refuse the blood tests. Officer Focareta repeated the *O'Connell* warnings to Licensee but he refused to consent to blood testing.

By letter dated September 1, 1999, the Department informed Licensee that it was suspending his operating privilege for one year pursuant to Section 1547(b)(1) of the Code for failure to consent to chemical testing. Licensee appealed to the trial court and it held a *de novo* hearing on March 23, 2000.

At the hearing, Licensee's counsel made a motion in limine arguing that the Department failed to turn over the breathalyzer readings in accordance with Section 1547(g) of the Code. Counsel maintained that he was denied the right to cross-examine the Department's witnesses on the breathalyzer readings because the Police Department destroyed them. The tri-

---

2. 75 Pa.C.S. § 3731.

3. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

al court denied the motion; however, its decision ultimately rested on the Department's inability to produce the breathalyzer readings.

Sergeant Kudranski and Officers Temple and Focareta testified as stated above. Additionally, Officer Focareta stated that in his opinion, Licensee attempted to fool the breathalyzer machine or was unwilling to provide a second sufficient sample on any of the three tests he administered. He stated that the breathalyzer machine prints out a reading of "invalid tests" when a sufficient sample is not provided and that as a matter of course, he threw away such readings. Officer Focareta acknowledged that Licensee asked to use the restroom but stated that he denied the request in accordance with his training on use of the breathalyzer machine.

Licensee testified on his own behalf. He stated that when Officer Temple arrived on the scene, he asked that he be allowed to urinate, but the request was repeatedly denied until such time as he was returned to the Police Department after leaving the hospital. Licensee testified that he could not provide a second sufficient sample on any of the tests because the pressure of having to urinate would have made him soil himself.

Licensee further testified that he overheard two of the officers discussing his breathalyzer tests and overheard the numbers nine, two, nine, and three. He claimed that he was not informed that he failed to provide sufficient samples and was not informed as to why a second chemical test was requested.

Licensee's father also testified. Mr. Whiteford testified that he was at the Police Department when the breathalyzer tests were given to his son and that he likewise overheard the conversation where the numbers nine, two, nine and three were mentioned. He acknowledged that he instructed his son to refuse to consent to blood testing.

At the conclusion of the hearing, the trial court sustained Licensee's appeal. In its memorandum opinion, the trial court stated:

> Despite [its] testimony, the [Department] was unable to produce the paper printout of the testing results that would show the failure to provide the two consecutive sufficient samples. [The trial court] believed that this corroborative physical evidence was necessary to establish the Department's case and to ensure an adequate defense. Absent the availability of this evidence [Licensee] was denied a full opportunity to prepare his defense; documentation of the testing may confirm an aberrant event either to [Licensee's] benefit or detriment.

(Trial Court opinion dated March 21, 2001) The trial court made no findings of fact.

∎ The Department now appeals to this Court, claiming that the trial court erred in sustaining Licensee's appeal on the basis that the Department was unable to provide him with the results of the breathalyzer tests pursuant to Section 1547(g) of the Code.[4] On appeal, we are

---

4. The Department raises two other issues as well. First, the Department maintains that the case *sub judice* is distinguishable from *Carlin v. Department of Transportation, Bureau of Driver Licensing,* 739 A.2d 656 (Pa. Cmwlth.1999), *appeal denied,* 563 Pa. 678, 759 A.2d 924 (2000), wherein we held that because a police officer's refusal to allow a licensee an opportunity to urinate placed an impermissible burden on the licensee, the licensee's failure to provide sufficient breath samples was excused. Secondly, the Department maintains that Licensee failed to redeem his refusal to submit to the breathalyzer test by refusing to submit to blood testing. Because we conclude that the Department's

limited to determining whether the trial court committed an error of law or abused its discretion, or whether the findings of fact are supported by competent evidence. *Purcell v. Department of Transportation, Bureau of Driver Licensing,* 689 A.2d 1002 (Pa.Cmwlth.1997).

■ To sustain a license suspension under Section 1547(b) of the Code, the Department must demonstrate that the licensee: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to chemical testing; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his operating privilege. *Id.* If the Department is able to sustain its burden, the burden then shifts to the licensee to prove that he was physically unable to take the test or that he was incapable of making a knowing and conscience refusal. *Department of Transportation, Bureau of Driver Licensing v. Wilhelm,* 156 Pa.Cmwlth. 24, 626 A.2d 660 (1993).

■ Section 1547(g) of the Code provides that "[u]pon the request of the person tested, the results of any chemical test *shall* be made available to him or his attorney." 75 Pa.C.S. § 1547(g)(emphasis added). Although there is no case law directly addressing the present situation, we are guided by Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903, and a decision addressing the Commonwealth's duty to preserve test samples.

Section 1903 of the Statutory Construction Act of 1972 provides that words are to be construed according to their common and approved usage. 1 Pa.C.S. § 1903. Here, the word "shall" denotes a mandatory, not discretionary instruction. *See Cranberry Park Assocs. v. Cranberry Tp. Zoning Hearing Board,* 561 Pa. 456, 751

A.2d 165 (2000) (citing *Commonwealth v. Strader,* 548 Pa. 208, 696 A.2d 151 (1997)("[b]y definition, 'shall' is mandatory")); *see also* Black's Law Dictionary 1375 (6th ed.1990). Thus, by statute, the Department was under an affirmative duty to remit the breathalyzer results to Licensee upon request regardless of the readings.

Albeit in the context of a criminal proceeding, the Superior Court addressed the Commonwealth's duty to preserve chemical test samples under Section 1547 of the Code. In *Commonwealth v. Tillia,* 359 Pa.Super. 302, 518 A.2d 1246 (1986), the defendant sought a suppression of the results of blood testing because the Commonwealth failed to preserve the blood sample for independent analysis. In rejecting the defendant's argument that the blood test results should have been suppressed, the Court stated that due process requires the Commonwealth to disclose favorable evidence that is material to either the guilt or punishment of a defendant and that Section 1547(g) of the Code requires that the test results be available to a defendant for independent analysis. It is the test results that are determinative of a defendant's guilt or innocence. Thus, the Court determined that due process requires that the Commonwealth provide a defendant with the results of the test and the opportunity to question the reliability or accuracy of the test results.

■ Although the appeal before us concerns a civil penalty, the mandates of Section 1547(g) of the Code do not distinguish between civil and criminal proceedings. Therefore, Section 1547(g) is equally applicable to both types of procedures. Presently, the Police Department, and therefore the Department, denied Licensee the

---

failure to remit the results of Licensee's breathalyzer test is dispositive of this appeal,

we need not address the Department's other arguments.

opportunity to challenge the results of the breathalyzer tests.

Moreover, we are not persuaded by the argument that the breathalyzer readings would not support the Department's case. Officer Focareta testified that the breathalyzer prints an "invalid test" response when the test is terminated prior to completion. The "invalid test" reading would substantiate the Department's position that Officer Focareta terminated the test because Licensee refused to supply a sufficient sample.[5]

And finally, we distinguish our decision in *Department of Transportation, Bureau of Driver Licensing v. Biesinger*, 104 Pa. Cmwlth. 241, 521 A.2d 969 (1987), from the present situation. In that case, the lower court sustained the licensee's appeal of a one-year suspension of his operating privilege because he was not permitted to view the digital read-out that monitored the amount of air blown into the breathalyzer machine. On appeal, we reversed the lower court's decision. We concluded that the lower court's reliance on Section 1547(g) of the Code was misplaced because that section refers to results that are normally printed by the breathalyzer at the conclusion of the procedure. In *Biesinger*, no results were available because the licensee failed to supply a sufficient sample to enable the device to produce a reading.

Presently, Officer Focareta testified that the breathalyzer machine printed an "invalid" test response to Licensee's failed attempts. Because Officer Focareta threw the readings away, he denied Licensee the opportunity to challenge the breathalyzer test results.

Regardless of the readings of the breathalyzer machine, Section 1547(g) of the Code places an affirmative duty on the Department to make the results available to a licensee or his counsel upon request. Thus, we conclude that where breathalyzer tests are terminated prior to completion and "invalid" test readings are generated, the police are required to retain the readings as results of chemical testing.[6] Our decision places no additional burden on the police as they routinely retain the breathalyzer readings or blood test results that reflect insufficient breath samples or blood-alcohol content.

Accordingly, we affirm.

### ORDER

AND NOW, this 24th day of August, 2001, the March 23, 2000 order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

---

**5.** In *Valania v. Department of Transportation, Bureau of Driver Licensing*, 695 A.2d 953 (Pa. Cmwlth.1997), we stated that the Department may present either the testimony of the administering officer or the breathalyzer readings from a properly calibrated machine to establish that a licensee failed to provide sufficient breath samples. In *Valania*, however, the Department's failure to preserve the breathalyzer results pursuant to Section 1547(g) of the Code was not at issue. Moreover, while the testimony of the administering officer may be sufficient to satisfy the Department's burden, the trial court in the case *sub judice* did not make any findings of fact and,

consequently, there were no credibility determinations. We cannot assume that the trial court would have found the officers' testimony to be credible.

**6.** This Court recognizes the possibility that not all breathalyzer machines in use in the Commonwealth may generate a print out in the event of insufficient samples or incomplete tests. *See Biesinger*. Therefore, our holding is limited to those cases involving machines that physically generate a print out, regardless of a sample's sufficiency.