# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maurice Barnes            :
                                      :
            v.                :    No. 1300 C.D. 2015
                                      :    Submitted: May 20, 2016
Commonwealth of Pennsylvania,      :
Department of Transportation,       :
Bureau of Driver Licensing,        :
                  Appellant    :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: September 8, 2016**

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDOT), appeals an order of the Court of Common Pleas of Dauphin County (trial court) that sustained the statutory appeal of Maurice Barnes (Barnes) from a one-year suspension of his operating privilege imposed by PennDOT pursuant to 75 Pa. C.S. §1547(b)(1)(i).[1] Upon review, we reverse.

---

[1] 75 Pa. C.S. §1547(b)(1)(i) provides, in pertinent part:

> If any person placed under arrest for a violation of section 3802 [pertaining to driving under the influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [PennDOT] shall suspend the operating privilege of the person as follows ….

# I. Background

While on duty, Officer Patrick Ribec (Officer Ribec) of the Lower Swatara Township Police Department, observed a silver Buick sedan fail to signal while entering onto PA 283 North (283N). Notes of Testimony, 6/25/15 (N.T.), at 6; Reproduced Record (R.R.) at 16a. Officer Ribec conducted a traffic stop and asked the driver, Barnes, for his license, registration and insurance card. Id. The time was 0029 hours. N.T. at 7; R.R. at 17a. At that point, Officer Ribec did not suspect Barnes was driving under the influence (DUI).[2] N.T. at 14-15; R.R. at 18a-19a.

Officer Ribec ran a check for warrants for both Barnes and his passenger, Jessica White (White). N.T. at 6; R.R. at 16a. Both occupants had outstanding warrants. Id. Officer Ribec waited for the assistance of other officers to aid in the arrest. Id. Officer Ribec arrested Barnes on the outstanding warrants. N.T. at 9; R.R. at 17a.

Once the other officers arrived, Officer Ribec asked Barnes to step out of his vehicle. The officer smelled a general odor of burnt marijuana about Barnes' person. N.T. at 6-7; R.R. at 16a-17a.

Officer Ribec also assisted another officer in arresting the passenger, White, on outstanding warrants. During this process, Officer Ribec asked the

---

[2] Officer Ribec testified on cross-examination that Barnes did not swerve, speed or travel at an inconsistent rate of speed. N.T. at 12-14; R.R. at 18a. Officer Ribec further testified Barnes' speech was normal (not slurred), he did not appear confused, and Officer Ribec initially did not suspect Barnes was under the influence of anything. Id.

2

passenger if she recently smoked marijuana, "and she informed me that her and [Barnes] were at the Hollywood [a pay-by-the hour motel] and smoked marijuana around, approximately 2330 hours." N.T. at 7; R.R. at 17a.

Prompted by this information, Officer Ribec returned to Barnes and asked whether he had smoked marijuana. N.T. at 8; R.R. at 17a. Barnes indicated he was a frequent marijuana user, and smoked earlier in the day, but he did not smoke marijuana at the Hollywood Motel. Id. Thereafter, Officer Ribec transported Barnes to the Dauphin County Judicial Center. Id. During transport, Officer Barnes continued to smell the odor of burnt marijuana. Id.

Consequently, at the Judicial Center, Officer Barnes conducted a field sobriety test known as the horizontal gaze nystagmus (HGN). Id. The officer asked that the test be performed despite knowing that there would be no positive signs due to marijuana. Id. Officer Ribec asked for performance of the test to see if Barnes could follow directions; it also afforded the officer a better opportunity to look at Barnes' eyes. Id.

Nevertheless, in Officer Ribec's view, Barnes showed signs of possible impairment: bloodshot and glassy eyes and leaning against a wall. N.T. at 8-9; R.R. at 17a. After the officer told Barnes not to lean against the wall, he did not do it again. N.T. at 9; R.R. at 17a. Accordingly, the officer asked Barnes to submit to chemical testing. Barnes refused. N.T. at 9-11; R.R. at 17a-18a. Thereafter, Officer Ribec read the entire Form DL-26, Chemical Testing Warnings, verbatim. Id. Barnes continued to refuse chemical testing. Id.

3

PennDOT subsequently suspended Barnes' operating privileges for one year for refusing a police officer's request to submit to chemical testing pursuant to 75 Pa. C.S. §1547(b)(1)(i).

Barnes appealed the suspension of his operating privileges. At the end of a *de novo* hearing, the trial court sustained Barnes' appeal and rescinded the suspension of his operating privileges. The trial court specifically stated: "We have a situation where the defendant is taken into custody pursuant to a warrant for another offense disrelated to this." N.T. at 25; R.R. at 21a. The trial court also concluded that "the officer did not have enough indicia in this case, based upon what he limitedly saw, to trigger placing him under arrest for driving under the influence of marijuana, which then triggers the DL-26 situation." Id.

This appeal by PennDOT followed. After PennDOT filed a concise statement of the errors complained of on appeal, the trial court filed a written opinion explaining its reasoning.

The trial court explained that the passenger's statement to the officers about smoking marijuana was ambiguous as to Barnes' involvement. The trial court also explained that Barnes could acquire the odor of burnt marijuana just by being near another person smoking it. Relying on Stancavage v. Department of Transportation, Bureau of Driver Licensing, 986 A.2d 895 (Pa. Cmwlth. 2009), the trial court explained that bloodshot, glassy eyes could be an indication of intoxication where at least one other obvious physical condition is present to provide reasonable grounds, and the evidence did not convincingly establish such

4

other obvious physical condition in this case. The trial court also commented on the availability of other tests and alternative means to establish another obvious physical condition, but Officer Ribec did not employ alternative sources. "As such, there were no reliable physical indicators that [Barnes] was under the influence of a controlled substance which would satisfy the reasonable grounds standard." Tr. Ct., Slip Op., 12/15/15, at 7.

## II. Issues

On appeal,[3] PennDOT raises factual and legal questions. Factually, PennDOT asks whether Officer Ribec credibly testified that he smelled the odor of burnt marijuana, and that both the passenger, White, and Barnes said Barnes smoked marijuana earlier. Legally, PennDOT asks whether the trial court erred in holding Officer Ribec did not have reasonable grounds to believe Barnes was operating his vehicle while under the influence of a Schedule I controlled substance in violation of 75 Pa. C.S. §3802.

## III. Discussion

In order to support the one-year suspension of Barnes's operating privileges under 75 Pa. C.S. §1547(b)(1)(i), it was necessary for PennDOT to prove Barnes: (1) was arrested for a violation of 75 Pa. C.S. §3802 by a police officer who had reasonable grounds to believe Barnes was operating or was in actual physical control of the movement of a vehicle while he was in violation of

---

[3] Our review is limited to determining whether the findings of fact were supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion. Cole v. Dep't of Transp., Bureau of Driver Licensing, 909 A.2d 900 (Pa. Cmwlth. 2006).

5

75 Pa. C.S. §3802; (2) was asked to submit to a chemical test; (3) refused to do so; and, (4) was specifically warned a refusal would result in the suspension of his operating or driving privilege and would result in his being subject to the penalties set forth in 75 Pa. C.S. §3804(c) if he were later convicted of violating 75 Pa. C.S. §3802(a). Banner v. Dep't of Transp., Bureau of Driver Licensing, 737 A.2d 1203 (Pa. 1999); Martinovic v. Dep't of Transp., Bureau of Driver Licensing, 881 A.2d 30 (Pa. Cmwlth. 2005).

Here, Barnes was arrested initially on warrants for unrelated charges. While held in custody on the warrants, Officer Ribec obtained more information and observed Barnes. Then, he read the entire DL-26 form verbatim to Barnes. This Court has held that reading the entire DL-26 form, including language that "you are now under arrest for driving under the influence," constitutes an arrest for DUI. Maletic v. Dep't of Transp., Bureau of Driver Licensing, 819 A.2d 640 (Pa. Cmwlth. 2003) (en banc).

There is no question that Barnes was the operator of a vehicle, that he was asked to submit to a chemical test, that he refused, and that he was given the required warnings. Therefore, the only issue is whether Officer Ribec had reasonable grounds to believe Barnes was operating the vehicle in violation of 75 Pa. C.S. §3802[4] when he requested the chemical test.

---

[4] 75 Pa. C.S. §3802(d)(1)(i) provides in pertinent part (with emphasis added):

> **(d) Controlled substances.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

**(Footnote continued on next page…)**

6

"Reasonable grounds" exist when a person, in the position of Officer Ribec, viewing the facts and circumstances as they appeared at the time of the arrest, could conclude Barnes operated a vehicle while under the influence of a controlled substance. Banner, 737 A.2d at 1207. The "reasonable grounds" standard used to support a license suspension is a lesser standard than the probable cause standard required for criminal prosecution. Id. In fact, the arresting officer need not even be correct in his belief that the licensee was intoxicated. Dep't of Transp., Bureau of Traffic Safety v. Dreisbach, 363 A.2d 870 (Pa. Cmwlth. 1976). The question of whether reasonable grounds exist is reviewed on a case by case basis. Banner.

PennDOT argues an arresting officer may rely on behavior indicating the presence of a controlled substance such as marijuana in determining whether the officer has reasonable grounds to request a test. Farnack v. Dep't of Transp., Bureau of Driver Licensing, 29 A.3d 44 (Pa. Cmwlth. 2011). In Farnack, also a controlled substance case, the arresting officer observed several indicia of controlled substance impairment including, red, glassy and bloodshot eyes, difficulty speaking, inability to focus or maintain eye contact and difficulty with simple motor functions. We held these were sufficient indicia of intoxication to warrant a request for a blood test.

---

**(continued…)**

> (1) There is in the individual's blood <u>any amount</u> of a:
>
>> (i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.

7

PennDOT also discusses Commonwealth v. Jones, 121 A.3d 524 (Pa. Super. 2015), appeal denied, 135 A.3d 584 (Pa. 2016).  In that case, the police officer stopped Jones' vehicle because of a suspended registration.  Upon approaching Jones, the officer immediately noticed a strong odor of burnt marijuana emanating from Jones' vehicle.  Jones was requested to submit to a blood test and agreed.  The test results showed Jones had the active ingredient of marijuana in his blood.  Jones was convicted.  On appeal, he argued the smell of burnt marijuana alone did not provide the officer with probable cause to arrest him for DUI.  The Superior Court rejected this argument and affirmed Jones' conviction for driving under the influence of a controlled substance (marijuana) in violation of 75 Pa. C.S. §3802(d)(1)(iii).

PennDOT asserts it is not necessary for a police officer to observe a person suspected of driving under the influence of a controlled substance to manifest signs of impairment similar to those normally observed in a person who is under the influence of alcohol.  Rather, PennDOT argues, an arresting officer must have sufficient information to form a reasonable belief that a driver has any amount of a Schedule I controlled substance in his blood.  Thus, the issue is whether Officer Ribec had reasonable grounds to believe Barnes was operating his vehicle with any amount of controlled substance in his blood.

PennDOT asserts Officer Ribec had three sound reasons to believe a blood test would reveal evidence of marijuana in Barnes' blood: (1) the odor of burnt marijuana emanating from Barnes when he was close to Officer Ribec; (2) the passenger, White's, statement that she and Barnes smoked marijuana about an

8

hour earlier; and, (3) Barnes' admission that he smoked marijuana earlier in the day. As such, PennDOT contends that, in light of the "totality of the circumstances," Banner controls. PennDOT argues the trial court erred as a matter of law when it determined Officer Ribec did not have reasonable grounds to believe Barnes operated his vehicle in violation of 75 Pa. C.S. §3802.

In response, Barnes argues that reasonable grounds did not exist to support a request for a chemical test of his blood because insufficient indicia of intoxication existed to indicate that Barnes was under the influence of a controlled substance.

Barnes attempts to distinguish the Superior Court's decision in Jones, relied upon by PennDOT. Barnes asserts that Officer Ribec never testified the odor was strong, he could not tell from where the odor was coming, he could not tell if the odor was on Barnes' clothing or his breath, and Barnes' passenger, White, admitted to Officer Ribec that she smoked marijuana in Barnes' presence an hour before the traffic stop.

Barnes also attempts to distinguish Farnack. Unlike the defendant in Farnack, Barnes did not display motor skill deficits, Barnes did not exhibit any issues with balance or coordination, and Barnes was able to focus and follow commands when Officer Ribec told Barnes to stop leaning against a wall. Thus, Barnes argues, the trial court correctly determined Officer Ribec lacked sufficient indicia of intoxication to warrant requesting a blood test on Barnes.

9

We conclude that Officer Ribec had reasonable grounds to request a blood test of Barnes. The persistent odor of burnt marijuana, bloodshot, glassy eyes, the statement of the passenger, White, and Barnes' admissions to being a frequent marijuana user and to smoking marijuana earlier in the day, are sufficient to provide reasonable grounds to believe Barnes had some marijuana residue in his blood when he was driving. While some of these four factors could be individually explained in a non-culpable manner, viewed in totality, a reasonable person could easily believe there was some amount of marijuana in Barnes' blood.

Nor does the <u>Stancavage</u> case, cited by the trial court, persuade us otherwise. In <u>Stancavage</u> this Court stated: "Clearly, then, a showing of glassy eyes alone is insufficient to support the conclusion that an officer had reasonable grounds to believe an individual was intoxicated at a given point in time." <u>Stancavage</u>, 986 A.2d at 899. In this case, there were factors beyond glassy eyes which support a determination that reasonable grounds existed to request a chemical test.

Accordingly, we reverse the trial court and reinstate the suspension of Barnes' operating privileges.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maurice Barnes                           :
                                         :
                                         :
            v.                           :    No. 1300 C.D. 2015
                                         :
                                         :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :
Bureau of Driver Licensing,              :
                    Appellant            :

# **O R D E R**

**AND NOW**, this 8th day of September, 2016, the order of the Court of
Common Pleas of Dauphin County is **REVERSED**.


_____
ROBERT SIMPSON, Judge