J-S57035-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KOREY THOMPSON | |
| Appellant | No. 506 EDA 2014 |

Appeal from the Order entered January 23, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: MC-CR-0026151-2011

BEFORE:  DONOHUE, MUNDY, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:           **FILED DECEMBER 04, 2014**

Appellant Korey Thompson appeals from the January 23, 2014 order[1]

of the Court of Common Pleas of Philadelphia County (trial court), which

denied his petition for writ of *certiorari*[2] (Petition) after he was convicted in

---

[1] Insofar as Appellant attempts to appeal from the July 26, 2013, judgment of sentence entered in Municipal Court of Philadelphia, we must disagree. The appeal here lies from the trial court's January 23, 2014 order denying Appellant's Petition. **See generally Commonwealth v. Wormley**, 949 A.2d 946, 947 (Pa. Super. 2008).  Accordingly, we have corrected the caption above.

[2] As we have explained:

A petition for a writ of certiorari is an alternative to an appeal for a trial *de novo* in the common pleas court.  Whereas the petition requests that the common pleas court review the record made in the municipal court, the appeal gives the defendant a new trial without reference to the record established in the municipal court.  The following example illustrates the difference between the two procedures: "[I]f the evidence was insufficient to sustain the conviction, [the] . . . writ of certiorari would terminate the

*(Footnote Continued Next Page)*

the Philadelphia Municipal Court of driving under the influence (DUI) of a controlled substance in violation of Section 3802(d)(1)(iii) and (2) of the Motor Vehicle Code (Code).[3]  On appeal, Appellant alleges that the municipal court erred in denying his pre-trial suppression motion.  For the reasons set forth below, we affirm the trial court's order.

The facts and procedural history underlying this appeal are undisputed.  As summarized by the trial court:

> On June 18, 2011, following his arrest at a sobriety checkpoint, [Appellant] was charged under Chapter 38 of the . . . Code for driving under the influence of a controlled substance metabolite . . . and driving under the influence under a drug or combination of drugs that impair ability to safely operate a vehicle . . . .  It was [Appellant's] second offense.
>
> [Appellant] filed a [m]otion to [s]uppress, which was heard by the Honorable Gerard Kosinski on July 26, 2012.  At the

(Footnote Continued) ————————————

> prosecution, while a *de novo* appeal would merely require a new trial at which the Commonwealth would have another opportunity to convict the defendant."

***Commonwealth v. Speights***, 509 A.2d 1263, 1264 n.2 (Pa. Super. 1986) (citation omitted), ***appeal denied***, 535 A.2d 83 (Pa. 1987).

[3] Section 3802(d) of the Code, relating to controlled substances, provides in pertinent part:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> (1) There is in the individual's blood any amount of a:
>
>   . . . .
>
>   (iii) metabolite of a [schedule I, II, or III] substance[.]
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(1)(iii), (2).

[m]otion to [s]uppress hearing, Lieutenant James McCarrick testified to instituting the sobriety checkpoint at 3600 Kensington Avenue on June 17, 2011, beginning at 10:00 p.m and concluding at 4:00 a.m. the following morning, June 18, 2011. . . .

On the basis of the evidence presented, Judge Kosinski held that the sobriety checkpoint comported with all constitutional requirements.

. . . .

The case proceeded to waiver trial on June 17, 2013 before the Honorable Bradley K. Moss. Based on the [testimonial evidence] . . . , and the legal arguments of [Appellant's] counsel and the Commonwealth, Judge Moss found [Appellant] guilty of the offense[s] charged. [Appellant's] counsel moved for a mistrial on the grounds that [Appellant] had previously appeared before Judge Moss, which Judge Moss denied.

[Appellant], through his counsel, filed [the Petition], which the [trial court] heard on January 23, 2014. . . . [The trial court], after hearing oral arguments, denied [Appellant's] Petition[.]

On January 30, 2014, [Appellant] timely filed this [n]otice of [a]ppeal to the Superior Court. Pursuant to [the trial court's] directive, on February 20, 2014, [Appellant] timely submitted his [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal.

Trial Court Opinion, 3/21/14, at 1-3 (internal record citation omitted). Following Appellant's filing of a Pa.R.A.P. 1925(b) statement, the trial court issued a Pa.R.A.P. 1925(a) opinion. In the Rule 1925(a) opinion, the trial court concluded that, based on the record, Appellant's claim challenging the municipal court's denial of his suppression motion was without merit, because the sobriety checkpoint passed constitutional muster. The trial court also dismissed as lacking merit Appellant's argument that the data or statistical evidence relied upon by Lieutenant McCarrick to institute the sobriety checkpoint was stale.

On appeal,[4] Appellant raises a single issue for our review:

Should not the evidence against [A]ppellant have been suppressed where [A]ppellant was illegally stopped at a DUI checkpoint that did not comply with constitutional standards because the specific location selected for the checkpoint was not supported by any data on DUI[-]related arrests or accidents at that location, and it was not chosen because it was likely to be traveled by intoxicated drivers?

Appellant's Brief at 3.

[T]o be constitutionally acceptable, a checkpoint[5] must meet the following five criteria: (1) vehicle stops must be brief and must not entail a physical search; (2) there must be sufficient warning of the existence of the checkpoint; (3) the decision to

---

[4] When considering a petition for writ of *certiorari*, a common pleas court sits as an appellate court with respect to the judgment of sentence entered in the lower court. **See Commonwealth v. Dincel**, 457 A.2d 1278, 1281-82 (Pa. Super. 1983). As a result, the standards of review used by the common pleas courts are identical to the standards used by this Court. Thus, with respect to the denial of a suppression motion, that review:

[is] limited to determining whether the [suppression court's] factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as it remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the [suppression] court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Scarborough**, 89 A.3d 679, 683 (Pa. Super. 2014) (quotation omitted). We note that in **In the Interest of L.J.**, 79 A.3d 1073 (Pa. 2013), our Supreme Court recently applied *prospectively* a new rule regarding the scope of review in suppression matters. **L.J.**, 79 A.3d at 1088-89. Specifically, it clarified that an appellate court's scope of review in suppression matters includes the suppression hearing record, and not evidence elicited at trial. Because the litigation in this case commenced prior to **L.J.**, it has no bearing on the instant case.

[5] Section 6308 of the Motor Vehicle Code authorizes law enforcement to engage in "systematic program[s] of checking vehicles or drivers," *i.e.*, checkpoints or roadblocks. 75 Pa.C.S.A. § 6308(b).

conduct a checkpoint, as well as the decisions as to time and place for the checkpoint, must be subject to prior administrative approval; (4) the choice of time and place for the checkpoint must be based on local experience as to where and when intoxicated drivers are likely to be traveling; and (5) the decision as to which vehicles to stop at the checkpoint must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene.

*Commonwealth v. Worthy*, 957 A.2d 720, 725 (Pa. 2008) (summarizing *Commonwealth v. Blouse*, 611 A.2d 1177 (Pa. 1992), and *Commonwealth v. Tarbert*, 535 A.2d 1035 (Pa. 1987)[6] (plurality) (generally known as the "*Tarbert*/*Blouse* guidelines")). "Substantial compliance with the *Tarbert*/*Blouse* guidelines is all that is necessary to minimize the intrusiveness of a roadblock seizure to a constitutionally acceptable level." *Commonwealth v. Yastrop*, 768 A.2d 318, 323 (Pa. 2001). The underlying policy of *Tarbert*/*Blouse* is the prevention of arbitrary checkpoints, which violate constitutional prohibitions on unreasonable searches and seizures. *See Blouse*, 611 A.2d at 1178.

Instantly, Appellant essentially argues that the Commonwealth did not satisfy the *Tarbert*/*Blouse* guidelines because it failed to adduce sufficient evidence to establish that the location for the checkpoint was likely to be traveled by intoxicated drivers. Appellant's Brief at 7. As a result, Appellant argues, the checkpoint was unconstitutional, and the evidence obtained therefrom should have been suppressed. *Id.* We disagree.

_____

[6] The *Tarbert* court balanced the intrusion on individuals from checkpoints with the government's legitimate interests. *Tarbert*, 535 A.2d at 1042-43.

Under Pennsylvania Rules of Criminal Procedure, "[t]he Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). To establish that a roadblock likely is to be traveled by intoxicated drivers, the Commonwealth, at the minimum,[7] must adduce evidence sufficient to indicate that the location of the roadblock was selected based on an evaluation of DUI arrests in a particular police district, which has a disparately high number of DUI arrests. *See Commonwealth v. Fioretti*, 538 A.2d 570, 576 (Pa. Super. 1988) (upholding a checkpoint where its location in District 13 was chosen based on an evaluation of drunk-driving arrests in the fifteen districts comprising the Williamsport Police

_____

[7] Roadblocks are deemed constitutional where the Commonwealth provides a greater quantum of location-specific evidence of DUI arrests or accident to justify the establishment of a roadblock. *See Commonwealth v. Stewart*, 846 A.2d 738, 741 (Pa. Super. 2004) ("[T]he route selected was likely to be traveled by intoxicated drivers . . . . The record indicates that there were thirty-two [DUI] arrests and twenty-six underage drinking citations in the area of the roadblock over the previous six years[.]"), *appeal denied*, 885 A.2d 42 (Pa. 2005); *Commonwealth v. Rastogi*, 816 A.2d 1191, 1193 (Pa. Super. 2003) ("[The officer] also stated that for confirmation he looked at Philadelphia Police Department accident investigation statistics for the years 1996 and 1997, which showed 80 and 101 arrests for those years respectively on Allegheny Avenue."), *appeal denied*, 856 A.2d 833 (Pas. 2004); *Commonwealth v. Ziegelmeier*, 685 A.2d 559, 562 (Pa. Super. 1996) ("[The officer] stated that during a thirteen month period from September 1, 1993, to October 1, 1994, he had statistics that showed there were 58 DUI arrests in the area of the checkpoint, out of a total of 80 DUI arrests in the entire borough."); *Commonwealth v. Myrtetus*, 580 A.2d 42, 45 (Pa. Super. 1990) ("[T]he selected roadblock location, time and day of the week were among the highest for DUI arrests[.]").

Department, and the record indicated that the district had a disparately high number DUI arrests).

Instantly, to establish its burden of proof, the Commonwealth at the suppression hearing offered the testimony of Philadelphia Police Lieutenant James McCarrick, employed in the accident investigation division. N.T. Hearing, 7/26/12, at 6. Lieutenant McCarrick testified that he was the DUI coordinator for the City of Philadelphia. *Id.* He also testified that, as the DUI coordinator, he has "received training from the State Police in the operation administration of DUI checkpoints." *Id.*

Regarding the particular checkpoint at issue *sub judice*, Lieutenant McCarrick testified that he instituted the sobriety checkpoint at 3600 Kensington Avenue on June 17, 2012. *Id.* at 7. He also testified that he chose the 3600 Kensington location based on statistical evidence from 2007 to 2009. *Id.* Specifically, describing how he examines the statistics, Lieutenant McCarrick relayed:

> Basically, what I do is break down the entire City of Philadelphia into individual districts, seven-day periods, 24-hour blocks. This is the 24th District, which, is in that time period was *fifth is in the city* for the number of DUI-related incidents, and it also tells me the largest majority of DUI incidents occur between 10:00 p.m. and 4:00 a.m. on Friday and Saturday.

*Id.* (emphasis added). Lieutenant McCarrick further testified that he chose the 3600 Kensington location because it was "large and safe enough to sustain an operation . . . which consists of four vehicles, 18 officers, three supervisors, and one large processing center, approximately the size of a fire truck." *Id.* at 7-8.

On cross-examination, elaborating on his background, Lieutenant McCarrick remarked "I go to training. I receive my training. I go to updated training each year; and, in the training, the instructors use various methods, whether it be slide shows, chalkboards, and the rest is physical operation itself." *Id.* at 11. He, however, acknowledged that he did not have written materials or guidelines on how to operate a sobriety checkpoint. *Id.* at 10-11. Lieutenant McCarrick further acknowledged that he personally selected the location and date of the checkpoint at 3600 Kensington Avenue. *Id.* at 11. Explaining how he collected information necessary to initiate a checkpoint, Lieutenant McCarrick testified: "I tabulated everything DUI that took place in the entire city during that three-year period, I broke down into districts, into days, into hours." *Id.* at 12. With respect to the nature of the underlying information, Lieutenant McCarrick testified that "every DUI arrest in the city . . . is assigned a . . . number of that arrest; where it took place; when it took place; who was arrested. I'm able to see every one of those arrests." *Id.* at 13. He, however, conceded that he did not review any Pennsylvania Department of Transportation (DOT) studies. *Id.*

Lieutenant McCarrick repeated that the checkpoint at issue ran from 10:00 p.m. until 4:00 a.m. *Id.* at 14. He also explained that, although the City of Philadelphia is 143 square miles, the 24th District, in which the 3600 block of Kensington Avenue is located, is roughly 2.2 square miles. *Id.* at 12. Finally, Lieutenant McCarrick admitted that DUI-related information was

not specific to any location within the 24th district, including the 3600 block of Kensington Avenue. *Id.*

Based on the evidence of record, we conclude that, under *Fioretti*, the Commonwealth provided sufficient evidence to justify the establishment of a checkpoint at 3600 Kensington Avenue. Here, Lieutenant McCarrick testified that he selected the 3600 Kensington location for the checkpoint because of his examination of three years of incident data or statistical evidence for the City of Philadelphia. The statistical evidence broken down by police district revealed that the 24th District, where 3600 Kensington Avenue is located, had the fifth highest rate of DUI-related incidents in the city. *See Fioretti*, 538 A.2d at 577 ("[T]he location of the roadblock was chosen based on a statistical analysis of which district had the highest number of driving under the influence arrests or accidents[.]"). We, therefore, agree with the trial court's conclusion that the checkpoint at 3600 Kensington Avenue was constitutional because the Commonwealth substantially complied with the *Tarbert*/*Blouse* guidelines. Accordingly, the trial court did not err in denying Appellant's Petition.

To the extent Appellant relies on this Court's decision in *Commonwealth v. Blee*, 695 A.2d 802 (Pa. Super. 1997), to compel a different result, we disagree. In *Blee*, the appellee was stopped at a sobriety checkpoint set up on Route 11 in Edwardsville, Luzerne County. *Blee*, 695 A.2d at 803-04. The police officer responsible for overseeing the selection of the checkpoint testified that, prior to selecting the location, "he

reviewed studies from [DOT] regarding DUI arrests and DUI-related accidents in Luzerne County during the years 1989 through 1994." *Id.* at 804. The officer, however, admitted on cross-examination that "the studies were not specific to DUI-related accidents and arrests at the particular location of the sobriety checkpoint, that is, Route 11 in Edwardsville." *Id.* He acknowledged that the studies specifically "indicated that, among roads in Luzerne County, Route 11 had the second highest incidence of alcohol-related accidents, and that, among the municipalities in Luzerne County, Edwardsville had one of the highest incidences of alcohol-related accidents." *Id.*

"The studies did not provide any information concerning DUI-related accidents or arrests in the area of the checkpoint nor did [they] indicate the likelihood of the checkpoint location being traveled by drunk drivers." *Id.* Based on these facts, a panel of this Court held that the sobriety checkpoint at issue was unconstitutional because it did not comport with the *Tarbert*/*Blouse* guidelines. *Id.* at 806 ("At the very least, the Commonwealth was required to present information sufficient to specify the number of DUI-related arrests and/or accidents on Route 11 in Edwardsville."). As a result, the panel affirmed the trial court's order granting the appellee's suppression motion. *Id.*

The facts of the case *sub judice* are distinguishable from those in *Blee*. As the trial court noted, in *Blee*,

> the highway at issue was situated in rural portions of the state. Further, the data relied upon in *Blee* concerned a road which

- 10 -

> stretched for a great many miles in that rural area. Here, the road at issue is located in the 24th District of Philadelphia, hardly a rural area. And, it is *significantly* smaller in size and mileage than the location/rule area at issue in **Blee**.

Trial Court Opinion, 3/21/14, at 10 (emphasis in original). Also, unlike **Blee**, in which only county-wide data was used in choosing a checkpoint location, here Lieutenant McCarrick testified that he selected a location in the 24th District because the district had the fifth highest rate of DUI-related incidents in the City of Philadelphia. With respect the specific location in the 24th District, Lieutenant McCarrick testified that he chose the 3600 block of Kensington Avenue because it was large enough to carry out safely a sobriety checkpoint. Accordingly, Appellant's reliance on **Blee** is misplaced.

In sum, the Commonwealth presented sufficient evidence to establish that the location for the checkpoint at 3600 Kensington Avenue was likely to be traveled by intoxicated drivers. **See Worthy**, 957 A.2d at 725 ("[I]t is essential that the route selected for the roadblock be one which, based on local experience, is likely to be traveled by intoxicated drivers."). Therefore, applying the **Tarbert**/**Blouse** guidelines, the checkpoint was constitutional.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/2014

- 11 -