J-A07025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MELISSA MARIE SPRING | |
| Appellant | No. 725 WDA 2015 |

Appeal from the Judgment of Sentence April 10, 2015
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001276-2014

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                    **FILED APRIL 13, 2016**

Appellant, Melissa Marie Spring, appeals from the April 10, 2015 judgment of sentence of 72 hours to 6 months imprisonment, plus a $1,000.00 fine, following her conviction for driving under the influence (DUI), highest rate of alcohol.[1]  After careful review, we affirm.

The trial court has set forth the relevant facts and procedural history as follows.

> [Appellant] was arrested on July 6, 2014[,] and charged with DUI and Careless Driving after she was stopped at a Pennsylvania State Police checkpoint.
>
> A preliminary hearing was held on August 20, 2014 before Magisterial District Judge D. Neil

---

[1] 75 Pa.C.S.A. § 3802(c).

McEwen. [Appellant] was held for trial on all charges at the conclusion of the preliminary hearing.

[Appellant] was arraigned on October 21, 2014.

An Omnibus Motion[, seeking suppression of evidence,] was filed on January 30, 2015. The sole issue raised was whether or not the DUI checkpoint was lawful.

An evidentiary hearing on the Omnibus Motion was held February 4, 2015. Th[e suppression] court made the following findings of fact at the conclusion of that hearing:

1. Corporal James Powell was a patrol supervisor for the Mercer barracks at the time in question.

2. One of his duties involves reviewing statistics and preparing request[s] for roadblock approval.

3. Once he makes a request, it's submitted to the patrol supervisor in Butler for final approval.

4. Upon receipt of final approval, the roadblock is implemented.

5. The barracks has between two and four roadblocks per year.

6. For the period from May 11th, 2013, through May 13th, 2014, there were four DUI stops within a five mile radius of the intersection of Route 58 and Irishtown Toad [sic] in Pine Township.

7. The total number of stops for alcohol related DUI's [sic] made by the Pennsylvania State Police during that period [in Mercer County] were forty-five (45).

- 2 -

8. Forty (40) of the forty-five (45) stops occurred between the hours of 10:00 p.m. and 5:00 a.m.

9. Six of the stops occurred on what can be considered holiday weekends; being the stop on July 5th, 2013, November 29th, 2013, two on December 27th, 2013, and two on January 5th, 2014.

10. Corporal Powell submitted a request to set a DUI checkpoint up for the hours of 10:00 p.m. until 4:00 a.m., from July 5th through July 6th, 2014, to Butler for approval. It was approved and the roadblock was set up.

11. [Appellant] is not contesting the manner in which the actual DUI checkpoint was run, but only his documentation for support of said checkpoint.

12. There are three bars on Route 58 west of the checkpoint.

13. Route 58 is a main artery between Mercer and Grove City.

On the basis of these facts, th[e suppression c]ourt denied the Omnibus Motion.

A non-jury trial was held on February 19, 2015. [Appellant] was found guilty of DUI, a first offense within 10 years under sub-section (c) and not guilty of the remaining charges.

[Appellant] was sentenced on April [10], 2015[.]

Trial Court Opinion, 6/4/15, at 1-3.

Appellant filed a timely notice of appeal on May 5, 2015.[2]  On appeal,

Appellant raises the following issue for our review.

> Was the sobriety checkpoint stop of [Appellant] lawful when the Commonwealth failed to demonstrate that there were any alcohol related arrests or DUI's [sic] proximate to the checkpoint?

Appellant's Brief at 5.

Our review is guided by the following.

> Initially, we note "[o]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Kearney***, 92 A.3d 51, 65 (Pa. Super. 2014) (quotation and quotation marks omitted).

> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Jaynes***, --- A.3d ---, 2016 WL 805572, at *2 (Pa. Super. 2016), *quoting,* ***Commonwealth v. Williams***, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted).

---

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

With this standard in mind, we note that "[i]t is undisputed that the stopping of an automobile and the detention of its occupants is a seizure subject to constitutional restraints." *Commonwealth v. Blouse*, 611 A.2d 1177, 1178 (Pa. 1992) (citations omitted).

> Article I, Section 8, of the Pennsylvania Constitution prohibits "unreasonable searches and seizures." In order to determine the reasonableness of a particular search or seizure a balancing analysis is utilized, wherein the intrusion on the individual of a particular law enforcement practice is balanced against the government's promotion of legitimate interests. A central concern in balancing the opposing interests is protecting the individual from arbitrary invasions at the unfettered discretion of the officers in the field.

*Id.* (citations omitted). Nevertheless, the Pennsylvania Motor Vehicle Code "provides police with authority to stop vehicles and conduct systematic DUI or traffic safety checkpoints, even though such stops are not based on reasonable suspicion or probable cause standards." *Commonwealth v. Garibay*, 106 A.3d 136, 139 (Pa. Super. 2014), *appeal denied* 123 A.3d 1060 (Pa. 2015); *see also generally* 75 Pa.C.S.A. § 6308(b)[3].

_____

[3] Section 6308(b) provides as follows.

### § 6308. Investigation by police officers

…

> **(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or

*(Footnote Continued Next Page)*

[W]hen conducting roadblock checkpoint stops, police in Pennsylvania must comply with the ***Tarbert***/***Blouse***[4] guidelines. Our Supreme Court has stated these guidelines as follows:

[T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should

_(Footnote Continued)_ ————————

has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

[4] ***Commonwealth v. Tarbert***, 535 A.2d 1035 (Pa. 1987); ***Blouse***, *supra*.

- 6 -

not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

*Blouse,* [*supra*] at 1180 (*quoting Tarbert,* [*supra*] at 1043). Otherwise stated:

[T]o be constitutionally acceptable, a checkpoint must meet the following five criteria: (1) vehicle stops must be brief and must not entail a physical search; (2) there must be sufficient warning of the existence of the checkpoint; (3) the decision to conduct a checkpoint, as well as the decisions as to time and place for the checkpoint, must be subject to prior administrative approval; (4) the choice of time and place for the checkpoint must be based on local experience as to where and when intoxicated drivers are likely to be traveling; and (5) the decision as to which vehicles to stop at the checkpoint must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene.

*Commonwealth v. Worthy,* 957 A.2d 720, 725 ([Pa.] 2008) (*citing Blouse, supra,* and *Tarbert, supra*). "Substantial compliance with the *Tarbert*/*Blouse* guidelines is all that is necessary to minimize the intrusiveness of a roadblock seizure to a constitutionally acceptable level." *Commonwealth v. Yastrop,* 768 A.2d 318, 323 ([Pa.] 2001). However, where police do not comply with the guidelines in establishing a checkpoint, the trial court should suppress evidence derived from the stop, including the results of field sobriety and blood alcohol testing. *See Commonwealth v. Blee,* 695 A.2d 802, 806 (Pa. Super. 1997).

*Garibay*, *supra* at 139-140 (parallel citations omitted).

Instantly, Appellant's challenge on appeal mirrors her challenge raised in her omnibus pretrial suppression motion. Specifically, Appellant confines her argument to the fourth prong of the above-mentioned test, the choice of time and place of the checkpoint. Appellant's Brief at 11-12. Appellant asserts that "only two incidents out of the 58 in the year being considered by the State Police are even remotely close to this intersection, and again are occurring in fact at different intersections than the checkpoint." *Id.* at 11.[5] "No DUI arrests or incidents and no accidents could be reported at the intersection of the actual checkpoint[.]" *Id.* Further, "although the Appellant does not dispute the time of day chosen for the checkpoint, the holiday weekend argument advanced by the Commonwealth does not hold water either." *Id.* at 12. "[O]nly 6 of the 58 incidents testified to occur[red] on a holiday weekend[.]" *Id.*

Upon review, we conclude Appellant's assertions are belied by the suppression court record. At the February 4, 2015 hearing, Corporal James H. Powell, of the Pennsylvania State Police, testified as follows about his role in setting up DUI sobriety checkpoints. N.T., 2/4/15, at 2. Corporal Powell stated that a focus report was run from May 2013 to May 2014 which

---

[5] On cross-examination Appellant asked Corporal Powell about additional DUIs, those for drug possession and DUIs with drugs. N.T., 2/4/15, at 13. Appellant includes the drug related DUIs in the overall report in reaching 58 DUIs in the year. *Id.*

revealed several DUIs in the Grove City, Pine Township, vicinity. *Id.* at 5.

Corporal Powell specifically testified to the following.

> Q. Now, when you're looking at the focus report from the location where the DUI checkpoint was established, what's the range, if you know, as to how far out of radius - - how do you determine what the range is when looking at that report?
>
> A. Basically, what was in the general area over the past year.
>
> Q. When you say general area, what do you mean?
>
> A. For instance, there was a DUI taken approximately two miles away at the Sheetz on 58 in Grove City and that was May 11th, 2013. There was another one at Irishtown Road and 208 and in Pine Township that occurred the year before.
>
> Q. What's the furthest away that report shows in reference to the Route 58 and Irishtown Road distance?
>
> A. The furthest location?
>
> Q. Yes.
>
> A. Looks like Williamson Road and Conneaut Lake Road in Sugar Grove Township.
>
> Q. How long time-wise or driving distance, mileage-wise?
>
> A. I'm going to say approximately 25, 30 miles.
>
> Q. Okay. Now, on the report, in addition to the vicinity report you have there that shows the DUI's [sic], what relationship, if any, to State Route 58 and Irishtown Road did you choose in this location, or why did you choose that specific location as opposed to some other location that's similar?

A. Probably because there's also drinking establishments in Grove City and Mercer and along 58 and that's a corridor that most people travel back and forth down 58, to get to Mercer and back to Grove City and there are numerous drinking establishments in those two locations.

Q. On that report, are there any incidents of DUI that occurred on State Route 58 and/or Irishtown Road in that previous year?

A. Other than the one I mentioned at Sheetz on State Route 58 and Irishtown Road, there was one on 358 south near George Junior Road and one near Nicklin Road, which is also in Pine Township.

Q. When looking at that report, through your experience and in doing these in the past, does this report generally reflect any report that you would use in setting up a DUI checkpoint in the past, as far as statistics go, when you're looking to try and find a centralized location?

A. Yes.

> The Court: If I understand the testimony, there were three DUI's [sic] in that period?
>
> A. There was [sic] four.
>
> The Court: Sheetz, Nicklin - -
>
> A. Sheetz, right, and Irishtown Road, 208, Nicklin Road and State Route 58 near George Junior Road in Pine Township.
>
> The Court: How many DUI's [sic] did you have in Mercer County during that period?
>
> A. In Mercer County overall?
>
> The Court: Yeah. For that year.
>
> A. I count 45.

- 10 -

The Court:  Thank you.

Q.  Now, that 45 that you just talked about, is that the whole County of Mercer?

A.  That's the whole County of Mercer.

The Court:  These are PSP arrests?

A.  Yes.

Q.  So, of the 45 that you had, you base - - this represents roughly 10 percent of the general location of where - - at least, the Irishtown Road and State Route 58 represent about 10 percent of all DUI's [sic] you had in 2013?

A.  That's correct.

*Id.* at 6-9.

Upon review of the testimony, and in light of our standard, we conclude the trial court did not err in concluding the checkpoint substantially complied with the ***Tarbert***/***Blouse*** guidelines.  Appellant misconstrues the specificity required of the state police in choosing a location.  Appellant essentially argues the exact intersection of the checkpoint location must have a history of DUIs.  Rather, our cases have held that the officer in charge of setting up the checkpoint must articulate specifics such as the reason for the location and the number of prior DUIs in the area of the checkpoint.  ***See Commonwealth v. Ziegelmeier***, 685 A.2d 559, 562 (Pa. Super. 1996) (holding "there was testimony … that the determination was based on several factors, including volume traffic, number of DUI arrests in

that area (as compared to the total number in Camp Hill) and the number of DUI related accidents. Therefore, the roadblock was constitutional under the requirements of *Tarbert* and *Blouse*[]"); *cf. Blee*, *supra* at 806 (holding the officer "never testified as to the number of alcohol-related accidents and/or arrests on Route 11 in Edwardsville, the specific location of the sobriety checkpoint. … At the very least, the Commonwealth was required to present information sufficient to specify the number of DUI-related arrests and/or accidents on Route 11 in Edwardsville, the specific location of the sobriety checkpoint[]"). Herein, Corporal Powell testified to ten percent of the DUIs in Mercer County occurring in the area where the checkpoint was placed. Further, Route 58 was a main connection known locally to be traveled to Grove City.

Further, to the extent Appellant accepts the relevance of the Commonwealth's data that 40 out of 45 DUIs occurred between hours of 10:00 p.m. and 5:00 a.m., but focuses his inadequacy challenge solely on the fact that only six of the reported DUIs were committed on holiday weekends, we find Appellant's temporal argument unavailing. Appellant's Brief at 12. A review of the February 4, 2015 suppression hearing reveals that Appellant's holiday weekend argument was never raised or discussed at the hearing. The record is devoid of any challenge by Appellant to the date of the checkpoint, rather Appellant's argument was confined to the time of day during which the checkpoint was performed. On appeal, Appellant

concedes the she "does not dispute the time of day chosen for the checkpoint[.]" **Id.** Therefore, we conclude the state police proffered sufficient evidence that the place for the checkpoint was based on "local experience as to where and when intoxicated drivers are likely to be traveling[.]" **Garibay**, **supra** at 140, *quoting* **Worthy**, **supra**. Accordingly, the Commonwealth has substantially complied with the fourth **Tarbert**/**Blouse** factor and Appellant's argument is devoid of merit.

Based on the foregoing, we conclude the trial court properly denied Appellant's suppression motion. Accordingly, we affirm the trial court's April 10, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2016

- 13 -